# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEREMI LYNN JEREMIAH, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-15-201-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Jeremi Lynn Jeremiah requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on November 18, 1973, and was forty-one years old at the time of the most recent administrative hearing (Tr. 35, 231). She completed the twelfth grade, and has worked as a fast food worker (Tr. 24, 275). The claimant alleges she has been unable to work since January 4, 2010, due to bipolar disorder, attention deficit hyperactivity disorder, dyslexia, panic attacks, and pain in her knees (Tr. 274).

## Procedural History

On April 18, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and on March 15, 2012, she applied for supplemental benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Luke Liter held an administrative hearing and determined the claimant was not disabled in a written decision dated July 26, 2013 (Tr. 103-113); however, the Appeals Council reversed and remanded for the ALJ's failure to hold a supplemental hearing once the claimant obtained counsel (Tr. 118-120). On remand, ALJ Liter held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated February 26, 2015 (Tr. 13-27). The Appeals Council then denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, sit for sit hours in an eight-hour workday and stand/walk a combined total of two hours in an eight-hour workday, and can occasionally climb ramps or stairs, balance, kneel, stoop, crouch, and crawl, but was unable to climb ladders, ropes, or scaffolds (Tr. 19). Additionally, the ALJ limited the claimant to simple tasks (defined as unskilled work with a specific vocational preparation ("SVP") of 1-2), being unable to have contact with the public, and having superficial (defined as brief and cursory) contact with co-workers and supervisors (Tr. 19). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform, *e. g.*, document specialist, semi-conductor bonder, and electronic worker (Tr. 25-26).

**Review**

The claimant argues that the ALJ erred in his assessment of her mental impairments, specifically in relation to the opinion of a consultative examiner, improper picking and choosing of the evidence, and in the credibility analysis. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of bipolar disorder, borderline intellectual functioning, obesity, dyslexia, ADHD, osteoarthritis of the bilateral knees, and lumber spine degenerative disc disease, as well as the nonsevere impairments of hepatitis C, De Quervain's disease of the left hand, and migraine

headaches (Tr. 16). The medical evidence related to her mental impairments reflects that the claimant went to the hospital on November 23, 2011 for a suspected cardiac event, but reported that it began while she was emotionally distressed (Tr. 387). Test were normal and she was assessed with acute anxiety (Tr. 388).

Denise LaGrand, Psy.D., conducted a Mental Status/Diagnostic Examination on June 6, 2012, at which time she assessed the clamant with borderline intellectual functioning with an estimated IQ of 75-85 (Tr. 453-459). Her diagnostic impression was that the claimant had bipolar disorder that was well-controlled with medication, along with a global assessment of functioning score of 60 (Tr. 457). She indicated that the claimant had a mild degree of impairment in thirteen areas of functioning, and moderate degrees of impairment in handling the stress of a work environment and reacting appropriately to supervision/criticism (Tr. 457-458). She estimated that the claimant's prognosis would not change in the next twelve months (Tr. 458).

On July 16, 2012, Mark Schade, Ph.D., reviewed the claimant's record, noting her 2011 assessment of chest pain due to acute anxiety and Dr. LeGrand's examination, and concluded that the claimant was capable of basic work tasks and completing simple instructions, and that her statements were partially supported by the medical evidence and partially credible (Tr. 506). He then completed a mental RFC assessment in which he indicated that the claimant was markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 488-489). He then concluded that she could perform simple

tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not relate to the general public (Tr. 490).

In January 2013, the claimant began receiving services from Family and Children's Services, and was referred for individual rehabilitation, case management, and medication management. At the time, she reported she had been off her medications for a week, and her intake diagnosis was bipolar disorder I and a GAF of 60 (Tr. 596). In March she was medication compliant, and in July 2013 she requested help filing a DHS abuse report regarding abuse of her niece and nephew, stating she was attempting to gain custody of them (Tr. 600).

In his written opinion, the ALJ summarized the claimant's hearing testimony, then thoroughly summarized the evidence in the record (Tr. 17-24). The ALJ summarized Dr. LaGrand's report and gave it great weight, noting that it was consistent with her findings upon examination as well as the minimal treatment history up to that time and in light of the claimant's daily activities (Tr. 22). He noted that that she had specifically indicated there were no objective findings to support any limitations, and that this report did not support limitations greater than the assessed RFC (Tr. 21). Turning to Dr. Kache's opinion, the ALJ summarized his findings and stated, "[w]hile some limitations were identified on examination, these limitations do not support the alleged severity of the claimant's complaints [and] are not inconsistent with the manipulative limitations in the above [RFC]" (Tr. 22). The ALJ noted Dr. Bell's reviewing opinion, but found that the medical evidence indicated that an eroded light physical limitation was more appropriate (Tr. 23). The ALJ noted her reports of ongoing depression, but also noted she believed

her medications were helping her and that she continued to do well on her prescribed medications through her primary care provider (Tr. 23). He gave great weight to Dr. Schade's assessment regarding the claimant's mental health limitations, stating it was consistent with her daily activities, the mental status testing, and the newer records which reflected that medications generally controlled her symptoms (Tr. 24). He specifically found that the claimant could have superficial contact with co-workers and supervisors but no contact with the public due to mood lability, based on the following: (i) a July 2013 report that she was able to talk to people and was better around crowds; (ii) caring for her niece and nephew over the summer and attempting to gain custody of them; (iii) she reported she would still be working if she had not been fired due to drug charges; and (iv) she attends church, visits her grandparents, talks on the phone, goes to the library, goes to a friend's home to do laundry, and gets along with authority figures (Tr. 23). He limited her to simple tasks because: (i) despite reported concentration and memory difficulties, no severe deficits were noted during testing or upon examination; (ii) the ability to care for her niece and nephew over the summer and the attempt to gain custody; (iii) her ability to manage food stamps, care for pets, work puzzles, do crafts, cook, drive, draw, and keep up with bills; and (iv) she reported she would still be working if she had not been fired due to drug charges (Tr. 24).

The claimant argues that the ALJ erred in assessing Dr. LaGrand's opinion, asserting that he adopted some but not all of her findings because the RFC assessment does not account for her moderate limitations of handling criticism or handling stress. "An ALJ must evaluate every medical opinion in the record, although the weight given

each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

In this case, the ALJ adequately discussed and analyzed Dr. LaGrand's opinion. As discussed the above, the ALJ summarized it at length, and provided a detailed explanation noting any potential discrepancies with his assigned RFC and explaining his reasons for doing so. The claimant argues that the limitation to simple work does not account for these limitations, but that was not the entirety of the ALJ's RFC assessment. Rather, the ALJ found that, in light of her assertions *and* the evidence, superficial contact with co-workers and supervisors and a restriction form contact with the public would account for her mental health limitations on these points (Tr. 23). The ALJ thus

specifically address Dr. LaGrand's findings. Based on this analysis, the ALJ did not commit error in failing to include any additional limitations suggested by the claimant. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

Additionally, the claimant alleges that the ALJ erred in his RFC assessment when he: (i) stated that there was no evidence of treatment for mental impairments prior to January 2013, (ii) focusing only on her good reports in July 2013 and not accounting for her reports of continued depression, and (iii) that the treatment notes did not reflect a considerable improvement in her symptoms. In actuality, the ALJ simply noted that the claimant did not have treatment records from a mental health provider prior to 2013 (Tr. 22), he *did note* her July 2013 report of ongoing depression (Tr. 23), and he took note of the claimant's own report from 2013 that she had improved on her medications after being off them (Tr. 23). The undersigned Magistrate Judge finds that the ALJ did not, therefore, commit any error in his analysis. As discussed, the ALJ noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, and his opinion clearly indicates that he adequately considered the evidence in reaching his conclusions regarding the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each

requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Finally, the claimant asserts that the ALJ improperly discredited her. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). Here, the claimant asserted the ALJ mischaracterized the record and therefore erred in his credibility analysis, but simply cited to the ALJ's opinion in support. She has not pointed to any specific error, and the argument essentially requests that the Court reweigh the evidence. Because the ALJ linked his credibility determination as required by *Kepler*, and provided specific reasons in according with *Hardman*, there is no indication that the ALJ misread the claimant's medical evidence taken as a whole, or that he failed to state his reasoning. Therefore, the ALJ's determination of the claimant's credibility is entitled to deference. *See Casias*, 933 F.2d at 801.

Contrary to claimant's arguments, the ALJ discussed all the evidence in the record and his reasons for reaching the RFC. *Hill*, 289 Fed. Appx. at 293 (10th Cir. 2008) ("The

ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The gist of the claimant's appeal is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 404.1545, 416.946.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**